IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM A. HOLM et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | No. 05 C 3910 |
|     v. | ) | |
| | ) | Wayne R. Andersen |
| VILLAGE OF COAL CITY et al., | ) | District Judge |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on separate motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure by defendant Grundy Sheriff's Deputy Rick Onsen ("Deputy Onsen"), as well as defendants Village of Coal City, Coal City Police Officers Harsiem, Nidiffer, Best, and Clark, Coal City Police Sergeants Klegman and Howell, and Coal City Police Chief Neary (the "Coal City defendants"). For the following reasons, those motions are granted.

## BACKGROUND

Plaintiff Adam Holm filed this action on behalf of himself and his three children, Nicholas (19 years old), Daniel (16 years old), and Rebecca (14 years old), against the Village of Coal City, Illinois, as well as several Coal City police officers, for alleged violations of the plaintiffs' civil rights. More specifically, the plaintiffs' complaint alleges various constitutional violations relating to alleged harassment, discrimination, and other negative interactions with the defendant Coal City police officers, based upon the following factual allegations:

*A.    June 30, 2005 Arrest of Adam Holm*

On June 30, 2005, Adam Holm was arrested for battery based upon a civilian complaint

signed by Rhonda Bannon alleging that Adam Holm spit on Bannon's minor son, Kenny Smith. Defendant Officers Harsiem and Nidiffer were the arresting officers. Neither officer testified at Adam Holm's criminal trial on the battery charge, and Holm was ultimately found not guilty of the charge. Bannon was also arrested on June 30, 2005 for assault based upon a civilian complaint filed by Adam Holm.

B. *July 3, 2005 Scooter Citations and Criminal Complaint Against Adam Holm*

On July 2, 2005, at approximately 7:17 p.m., defendant Officers Harsiem and Clark responded to a citizen complaint that Daniel Holm, an unlicensed driver, was in a Coal City skate park attempting to hit other individuals while riding a motorized scooter. At that time, Officers Harsiem and Clark advised Daniel and Adam Holm, who also was present in the skate park, that the use of a motorized scooter at the skate park, on the sidewalks, or on the roadway was prohibited. At approximately 10:14 p.m. on July 2, 2005, Officer Harsiem again observed Daniel Holm riding the electric scooter, this time on a roadway with no registration and no headlights. Adam Holm was with Daniel Holm, but was not riding the scooter. Officer Harsiem advised Daniel and Adam Holm that the scooter was going to be impounded based upon the Holms' failure to abide by a prior warning, inoperable lights, and no registration. However, Officer Harsiem did not take possession of the scooter at that time. Instead, Daniel and Adam Holm agreed to walk the scooter to the police station, but they did not do so. Officer Harsiem did not issue citations on the scene, and testified that he had intended to do so when Daniel and Adam Holm arrived at the police station with the scooter.

Because the Holms failed to bring the scooter to the Coal City police station on July 2, 2005, on July 3, 2005, Officer Harsiem wrote citations to Daniel Holm for operating a motorized scooter on the roadway and to Adam Holm for permitting an unlicensed driver to operate a

motor vehicle. Later in the day on July 3, 2005, Officer Harsiem and Sergeant Klegman went to the Holms' residence to deliver the citations to Daniel and Adam Holm, but allege that they were unable to do so because the Holms refused to open the door. The officers further allege that they observed Adam and Daniel Holm in the residence, in plain view, through the window while the officers knocked on the Holms' door. A criminal complaint was issued against Adam Holm for obstructing a police officer based upon his refusal to accept the citations. The charge was later modified to obstruction of service of process, and Adam Holm was found guilty of that charge after a trial by jury. Adam Holm alleges that he did nothing wrong and that the Coal City officers created false police reports to obtain that conviction.

C.   *July 3, 2005 Arrest of Adam Holm*

On the evening of July 3, 2005, Officer Clark witnessed Adam Holm driving on Route 113 in Coal City in a vehicle that was missing a headlight and headlight mount. Officer Clark, who was aware of the criminal complaint that had been issued against Holm earlier that day, pulled over Holm. Officer Clark was the only Coal City police officer on duty at the time, so Deputy Onsen was dispatched to the scene because it is standard procedure to have a second officer present during an arrest. Once Deputy Onsen arrived on the scene, Officer Clark advised Onsen that Clark was going to serve Adam Holm with a signed complaint for Holm's arrest.

Upon pulling his car to the side of the street, Adam Holm directed his daughter, Rebecca, to call Adam Holm's friend, William VanArkel, to the scene of the traffic stop. VanArkel arrived on the scene with his wife approximately three to five minutes after he was called. VanArkel parked his vehicle across the street from Holm's vehicle and attempted to approach Holm's vehicle. Officer Clark advised VanArkel to remain in his vehicle. Adam Holm then

3

began a conversation with VanArkel's wife across the street through the vehicles' open windows.

Officer Clark approached Adam Holm's vehicle. After two requests from Officer Clark, Adam Holm exited the vehicle and walked to the trunk area. Officer Clark then informed Adam Holm that there was a signed complaint for Holm's arrest and Officer Clark asked Holm to put Holm's hands behind his back. Adam Holm alleges that he complied with Officer Clark's orders and that he turned around to walk to the police car, escorted by Officer Clark on Holm's right side and Deputy Onsen on Holm's left side.

The defendants allege that, as Officer Clark and Deputy Onsen escorted Adam Holm to the police car, Holm stopped walking, stated in an argumentative tone that he "wasn't going anywhere," and leaned back against the officers to impede their escort of him. As a result, Officer Clark grabbed Holm by the arm and "yanked" him towards the police car. Holm again stopped walking and paused to complain to Officer Clark in what the defendants allege was a loud and argumentative tone. Officer Clark warned Holm that he would be charged with resisting arrest if he did not cooperate. Deputy Onsen then pushed Holm twice in the back to move him towards the police car. Holm stumbled from the first push but did not fall, and did not stumble from the second push. While being escorted to the police car, Holm yelled to the VanArkles to watch what was being done to him. Holm was eventually placed into the back of the police car. Officer Clark drove Holm to the Coal City police station where Holm was charged with resisting arrest. Holm denies that he resisted arrest and alleges that, throughout this incident, he was cooperative and relaxed. Holm was ultimately found not guilty of the charge of resisting arrest.

D.      *July 28, 2005 Scooter Seizure*

On July 28, 2005, Officer Harsiem observed Daniel Holm riding a motorized scooter on the roadway with some friends. Adam Holm observed and allowed Daniel and Sam Cerda (14-year-old girl) to ride the Holms' motorized scooter on the roadway. Officer Harsiem initiated a traffic stop on Daniel Holm and, during that stop, Officer Harsiem advised Daniel Holm that Daniel had been previously warned multiple times not to ride the scooter on the roadway. Officer Harsiem impounded the scooter based upon Daniel's continued use of the scooter on the roadway after being warned multiple times not to do so, and for Daniel's failure to transport the scooter to the Coal City police station on July 2, 2005. Officer Harsiem instructed Daniel Holm to notify Adam Holm of the impoundment.

Officer Harsiem returned to the police station and notified Assistant States Attorney Schaller regarding the incident with the Holms' scooter. Schaller advised Officer Harsiem to issue Daniel Holm a citation for riding a motorized scooter without a valid driver's license and to issue Adam Holm a citation for allowing an unauthorized person to drive. Officer Harsiem returned to the Holms' residence and issued those citations. Adam Holm did not inquire as to the impoundment of the scooter at that time.

Months later, Adam and Daniel Holm went to the Coal City police station and spoke with Officer Clark regarding the Holms' scooter. The police station was closed and Officer Clark, who was in his patrol car leaving the station, told the Holms to come back the next day to speak with the officer in charge of property. Neither Daniel nor Adam Holm ever returned to the police station to retrieve the scooter. The scooter remains at the Coal City police station.

*E.     General Allegations Against Other Defendants*

Adam Holm alleges in his complaint that all of the defendants participated in a civil conspiracy to deprive the Holms of their constitutional rights.  With respect to Coal City Police Chief Neary, Holm alleges that Chief Neary instructs his officers what to do and is therefore part of the alleged conspiracy.  With respect to Sergeant Howell, Holm alleges that Sergeant Howell stopped Holm one time and told Holm not to ride Holm's scooter on the road, and that Sergeant Howell "followed" Holm and Daniel while Holm was with Daniel on Daniel's paper route.  With respect to Officer Best, Holm alleges that Best participated in a conspiracy against Holm based upon Best's involvement in an investigation of an incident regarding Holm that allegedly occurred in 2001.

*F.     The Plaintiffs' Complaint*

On July 5, 2005, the plaintiffs initiated this suit against the defendants.  The plaintiffs filed their second amended complaint on April 28, 2006.  In that second amended complaint, the plaintiffs bring claims for (1) false arrest in violation of 42 U.S.C. § 1983 against Officers Harsiem and Nidiffer with respect Adam Holm's arrest on June 30, 2005,  (2) excessive force in violation of 42 U.S.C. § 1983 against Deputy Onsen relating to Adam Holm's arrest on July 3, 2005, (3) excessive force in violation of 42 U.S.C. § 1983 against Officer Clark relating to Adam Holm's arrest on July 3, 2005, (4) false arrest in violation 42 U.S.C. § 1983 against Officer Clark with respect to Adam Holm's arrest on July 3, 2005, (5) an illegal seizure of the plaintiffs' scooter in violation of the Fourth and Fourteenth Amendments to the United States Constitution against Officer Harsiem and Sergeant Klegman, (6) an equal protection violation under 42 U.S.C. § 1983 against Officer Harsiem relating to the citations issued to Adam and Daniel Holm

on July 28, 2005, (7) conspiracy against all individual defendants, and (8) a *Monell* claim against the Village of Coal City based on all of the complained-of actions of the individual Coal City defendants. Deputy Onsen now moves for summary judgment on all counts against him. The Coal City defendants separately move for summary judgment on all counts against them.

## DISCUSSION

A.  *Legal Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 611 (7th Cir. 1992). In order to survive a motion for summary judgment, the nonmoving party must present definite, competent evidence to rebut the summary judgment motion. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

B.  *False Arrest Claim With Respect to Adam Holm's June 30, 2005 Arrest*

The Coal City defendants argue that the plaintiffs' claim for false arrest regarding Adam Holm's June 30, 2005 arrest fails because the defendant officers had probable cause to arrest Holm on that date. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest . . . ." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "Police officers have probable cause to arrest an individual when the facts

7

and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person to believe that a crime had been committed." *Id.* Here, Officers Harsiem and Nidiffer arrested Adam Holm for battery based upon a civilian complaint signed by Rhonda Bannon alleging that Holm spit on Bannon's minor son. Police officers are entitled to rely on a civilian complaint made by a credible witness. *See id.* at 548 ("Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect."). Holm has produced no evidence that would lead us to question Bannon's credibility. Therefore, we find that Officers Harsiem and Nidiffer had probable cause to arrest Adam Holm on June 30, 2005. Accordingly, summary judgment is granted in favor of the Coal City defendants on the plaintiffs' claim for false arrest with respect to Adam Holm's arrest on June 30, 2005.

C.   *Excessive Force Claims Against Deputy Onsen and Officer Clark*

Both Deputy Onsen and the Coal City defendants argue that they should be awarded summary judgment on Adam Holm's claims of excessive force because the forces used by Deputy Onsen and Officer Clark in effecting Adam Holm's July 3, 2005 arrest were objectively reasonable. Excessive force claims in the context of an arrest or investigatory stop are analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used . . . is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* "The calculus of reasonableness

must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

We find that the forces used by Deputy Onsen and Officer Clark, respectively, in effecting Adam Holm's July 3, 2005 arrest were objectively reasonable in light of the facts and circumstances confronting them. Holm disagrees with the defendants' allegations that Holm created a contentious situation and provoked the officers by yelling at the officers, yelling at the VanArkels, and leaning back on the officers to prevent them from moving Holm to the police car. However, even if Holm's allegations that he was cooperative and relaxed during his arrest are true, the fact remains that he escalated the situation when he directed his daughter to call the VanArkels to the scene. Further, Holm admits that he stopped walking while Deputy Onsen and Officer Clark attempted to Escort Holm to the police car. Most importantly, however, Holm has presented no evidence that he was injured by the officers' use of force in any way. In the absence of any such evidence of injury, we cannot find that the officers used excessive force when Officer Clark "yanked" Holm or when Deputy Onsen twice pushed Holm in order to get Holm to move towards the police car. Therefore, summary judgment is granted in favor of Deputy Onsen and the Coal City defendants with respect to Adam Holm's claims of excessive force.

D.   *False Arrest Claim With Respect to Adam Holm's July 3, 2005 Arrest*

The Coal City defendants argue that the plaintiffs' claim for false arrest regarding Adam

9

Holm's July 3, 2005 arrest fails because Officer Clark had probable cause to arrest Holm on that date. We agree. Adam Holm was arrested on July 3, 2005 pursuant to a previously signed criminal complaint for obstructing a peace officer. Holm was also charged with resisting arrest. Holm was ultimately convicted on a modified obstruction of service of process charge. Although not necessary, Holm's conviction on the obstruction charge is sufficient for a finding a probable cause to have arrested him. *See Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990); *King v. Goldsmith*, 897 F.2d 885, 886 (7th Cir. 1990). Thus, because Holm was convicted of one of the charges for which he was arrested on July 3, 2005, he cannot now claim false arrest on the other charge. Accordingly, summary judgment is granted in favor of the Coal City defendants on the plaintiffs' claim for false arrest regarding Adam Holm's July 3, 2005 arrest.

E.   *Seizure of the Plaintiffs' Scooter*

The Coal City defendants argue that they should be awarded summary judgment on the plaintiffs' claim for an illegal seizure of the plaintiffs' scooter because Officer Harsiem had probable cause to impound the scooter. "The Fourth Amendment protects against unreasonable seizures . . . ." *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006). If a seizure is justified by probable cause, then the seizure is reasonable under the Fourth Amendment. *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003). Here, the evidence demonstrates that Officer Harsiem observed Daniel Holm, an unlicensed driver, driving a motorized scooter in a skate park on July 2, 2005, and on roadways without operable lights or registration on both July 2, 2005 and July 28, 2005. Adam Holm admits that both he and Daniel Holm were warned several times by Officer Harsiem that use of a motorized scooter at skate parks, on sidewalks, or

on roadways was prohibited. Further, the evidence demonstrates that Officer Harsiem instructed Daniel and Adam Holm to bring the scooter to the Coal City police station for impoundment on July 2, 2005, but that the Holms failed to do so. Under these circumstances, we find that Officer Harsiem had probable cause to seize the scooter on July 28, 2005. Additionally, the evidence demonstrates that the Coal City police officers did not intend to permanently deprive the Holms of the motorized scooter, and that the scooter remains available for pickup at any time. Therefore, we find that no unlawful seizure occurred, and summary judgment is granted in favor of the Coal City defendants on the plaintiffs' claim for an illegal seizure of the scooter.

F.   *Equal Protection*

In their second amended complaint, plaintiffs Adam and Daniel Holm allege a "class of one" equal protection violation under Section 1983 based on the fact that they were issued citations for Daniel's use of the scooter yet Sam Cerda, whom Officer Harsiem also observed driving the scooter, was not. To state a cognizable Section 1983 claim, a plaintiff must allege that (1) a person acting under color of state law engaged in conduct that (2) deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Starnes v. Capital City Media, Inc.*, 39 F.3d 1394, 1396 (7th Cir. 1994). To succeed on a "class of one" equal protection claim, a plaintiff must prove (1) that the plaintiff has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or that the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to be considered similarly situated, comparators must be *prima facie* identical in all relevant respects. *Id.* at 1002.

Here, we find that the Holms have failed to identify anyone that was similarly situated but intentionally treated differently than them. The Holms rely on Sam Cerda as a comparator. However, the evidence demonstrates that both Adam and Daniel Holm were warned several times over the course of several weeks about their prohibited use of the scooter, whereas Sam Cerda had never received such warnings. Additionally, the evidence demonstrates that, on July 2, 2008, Officer Harsiem directed Adam and Daniel Holm to bring their motorized scooter to the Coal City police station for impoundment, but that the Holms failed to do so. Again, Sam Cerda had never received any such instructions. Therefore, we find that Sam Cerda was not similarly situated to Adam and Daniel Holm for equal protection purposes. Because the plaintiffs have failed to identify any other comparators that were similarly situated and intentionally treated differently than them, summary judgment is granted in favor of the Coal City defendants on the plaintiffs' equal protection claim.

G.     *Conspiracy*

The plaintiffs generally assert that there is a conspiracy among all the defendant officers to deprive the plaintiffs of their constitutional rights. To prove a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) the actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Gregory v. Hartman*, No. 88-3169, 1990 U.S. App. LEXIS 13166, at *4-5 (7th Cir. 1989). We have already found in this opinion that none of the allegations against defendant Deputy Onsen, Sergeant Klegman, or defendant Officers Clark, Harsiem, or Nidiffer, rise to the level of a deprivation of the plaintiffs' constitutional rights. We further find that the general allegations against Chief Neary, Sergeant Howell, and Officer Best fail to rise to

12

the level of a constitutional violation. Thus, because the plaintiffs' have failed to prove any deprivations of their constitutional rights, their conspiracy claims must fail. Accordingly, summary judgment is granted in favor of Deputy Onsen and all of the Coal City defendants on the plaintiffs' claims for conspiracy.

H.      Plaintiffs' Monell Claim

The plaintiffs attempt to bring a Section 1983 claim against the Village of Coal City based upon the actions of the individual Coal City defendants. This claim must be evaluated under *Monell v. Dep't of Social Servs. of the City of New York* and its progeny. 436 U.S. 658 (1978). To succeed on such a *Monell* claim, the plaintiffs must prove (1) the existence of an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Here, the only policy identified by the plaintiffs is their claim that the Village of Coal City had a policy for seizing property that violated the plaintiffs' constitutional rights. However, we have ruled in this opinion that the plaintiffs' constitutional rights were not violated when Officer Harsiem seized the plaintiffs' scooter, and nothing in the record supports a finding that the Village of Coal City has any policy or practice that violates others' constitutional rights with respect to seizures. Because the plaintiffs have failed to identify any policy or practice that causes a constitutional violation, summary judgment is granted in favor of the Village of Coal City on all counts brought against it.

**CONCLUSION**

For the foregoing reasons, defendant Rick Onsen's motion for summary judgment [144] is granted with respect to all counts. Further, the motion for summary judgment by defendants Village of Coal City, Coal City Police Officers Harsiem, Nidiffer, Best, and Clark, Coal City Police Sergeants Klegman and Howell, and Coal City Police Chief Neary [155] is granted with respect to all counts. This case is terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: September 19, 2008